# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

THOMAS CLARENCE BROWNING III,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 CO 0026**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2020 CR 264

**BEFORE:**
David A. D'Apolito, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor, and *Atty. Tammie M. Jones*, Assistant Prosecuting Attorney, 135 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. J. Gerald Ingram,* Ingram Cassese and Grimm LLP, 7330 Market Street, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated: March 14, 2023

**D'APOLITO, P.J.**

{¶1} Appellant, Thomas Clarence Browning III, appeals from the July 6, 2021 judgment of the Columbiana County Court of Common Pleas convicting and sentencing him to an indefinite prison term of six years (minimum) to nine years (maximum) for felonious assault and endangering children, both felonies of the second degree, following a trial by jury.[1] On appeal, Appellant asserts he was denied his constitutional right to the effective assistance of trial counsel and alleges the verdicts were against the manifest weight of the evidence. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} On July 16, 2020, Appellant was indicted by the Columbiana County Grand Jury on two counts: count one, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1); and count two, endangering children, a felony of the second degree in violation of R.C. 2919.22(B)(1).[2] Appellant retained counsel and entered a not guilty plea at his arraignment.

{¶3} A trial by jury commenced on June 14, 2021.

{¶4} Appellee, the State of Ohio, presented ten witnesses: (1) Patrick Wright, a captain with the East Liverpool Police Department ("ELPD") at the time of the investigation in this case and a current criminal investigator with the Columbiana County prosecutor's office at the time of trial ("Captain Wright" or "Wright"); (2) Michael Thorne, the minor child's uncle and Thorne's brother ("Uncle Michael"); (3) Jennifer Boss, administrator at Eagle Christian Preschool ("Preschool Administrator Boss" or "Boss"); (4) Paula Beverly, an investigator with the Columbiana County Department of Job and Family Services, Children Services Division ("Investigator Beverly" or "Beverly"); (5) Janet Gorsuch, a

---

[1] Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, known as the "Reagan Tokes Law," significantly altered the sentencing structure for many of Ohio's most serious felonies by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after March 22, 2019.

[2] The minor victim in this case is referred to as "C.V." in the indictment. C.V. (d.o.b. 1/18/2018) ("the minor child") is the son of Appellant's former girlfriend, Michaele Thorne ("Thorne"). Appellant became involved in a relationship with Thorne, a co-worker at New Day Recovery, around October 2019. The minor child was two years old at the time of the offenses. At issue are three alleged incidents of physical abuse: December 2019; January 2020; and March 2020.

nurse practitioner with Akron Children's Hospital, Child Advocacy Center ("Nurse Practitioner Gorsuch" or "Gorsuch"); (6) Dr. Adelaide Eichman, a pediatrician with UPMC, Child Advocacy Division ("Dr. Eichman"); (7) Dr. Paul McPherson, a physician with Akron Children's Hospital ("Dr. McPherson"); (8) Thorne, Appellant's former girlfriend and the minor child's mother; (9) Ciara Lang, a chemical dependency counselor assistant with New Day Recovery ("Chemical Dependency Counselor Lang" or "Lang"); and (10) Darin Morgan, a detective with the ELPD ("Detective Morgan").

**{¶5}** Captain Wright testified Thorne told him about injuries she had observed on the minor child. (6/14/2021 Trial by Jury Tr., p. 214). Wright described Thorne as "cooperative" and "calm." (*Id.* at p. 214, 222). Wright also revealed Thorne delayed reporting the abuse by indicating to Detective Morgan that she was scared of Appellant. (*Id.* at p. 225).

**{¶6}** Uncle Michael testified he had temporary custody of the minor child under two safety plans. (*Id.* at p. 230). Uncle Michael exchanged text messages with Thorne in which Thorne had indicated the minor child was hurt and she believed Appellant was to blame. (*Id.* at p. 234-235; Exhibits 8 and 9). Uncle Michael replied, "'I knew it,'" and said he was not surprised. (*Id.* at p. 235-236; Exhibits 8 and 9).

**{¶7}** Preschool Administrator Boss testified she reported signs of potential physical abuse to Children Services on December 26, 2019 after discovering bruises on the minor child's face and red marks on his arms and legs. (*Id.* at p. 310). On Monday, January 20, 2020, Boss discovered bruising on the minor child's face and questioned Thorne as to the cause. (*Id.* at p. 319). Boss indicated Thorne told her the minor child tripped and fell. (*Id.*) The minor child had been at Appellant's home the weekend prior to January 20, 2020. (*Id.* at p. 682, 1091).

**{¶8}** Investigator Beverly was assigned to investigate this case on March 12, 2020. (*Id.* at p. 353). Beverly discussed Dr. Eichman's findings and opinion that the injuries, including black and blue marks, sustained in the March 2020 incident were intentionally inflicted upon the minor child. (*Id.* at p. 359-360). Beverly confirmed the two people with access to the minor child during this time period were Thorne and Appellant. (*Id.* at p. 376). Beverly revealed Thorne was concerned for the minor child's safety while in the care of Appellant. (*Id.*) Beverly also revealed Nurse Practitioner Gorsuch's findings

that the injuries the minor child sustained in the December 2019 incident were inconsistent with the child striking his head on a coffee table, as alleged by Appellant. (*Id.* at p. 381). Beverly opined the minor child's Pack 'n Play was not the source of his injuries, as speculated by Appellant. (*Id.* at p. 405). Beverly stated the minor child's grandmother and great-grandmother had concerns about Appellant and did not believe Thorne hurt the child. (*Id.* at p. 490-492).

**{¶9}** Nurse Practitioner Gorsuch testified regarding Thorne's statements that the minor child sustained injuries while he was left in Appellant's care. (*Id.* at p. 524). Gorsuch opined the injuries sustained in the December 2019 incident were "highly concerning for child abuse." (*Id.* at p. 530). Gorsuch's narrative reports were admitted into evidence. (Exhibits 28 and 30).

**{¶10}** Dr. Eichman testified that Thorne revealed she had noticed physical injuries on the minor child after being left in Appellant's care in December 2019 and March 2020. (*Id.* at p. 574, 584-585). Dr. Eichman repeated Thorne's assertion that she thought Appellant had hurt the minor child. (*Id.* at p. 588). Dr. Eichman concluded the injuries to the minor child included a subgaleal hemorrhage, multiple contusions on the face and ears, and swelling of the head. (*Id.* at p. 568). Dr. Eichman opined that Appellant's explanation of a temper tantrum did not explain the minor child's injuries and that the child had been a victim of physical abuse on multiple occasions. (*Id.* at p. 597).

**{¶11}** Dr. McPherson testified regarding reports by Thorne of the January 2020 incident with respect to bruises and rashes on the minor child and speculation as to how they may have occurred. (*Id.* at p. 620). Dr. McPherson's narrative report was admitted into evidence. (Exhibit 29). Dr. McPherson opined the injuries to the minor child were highly concerning for physical abuse. (*Id.* at p. 636).

**{¶12}** Thorne revealed she and Appellant had been romantically involved.[3] (*Id.* at p. 668). Throughout her testimony, Thorne described the injuries she observed in relation to each of the three incidents and implicated Appellant by alleging the injuries must have occurred while Appellant was watching the minor child. Thorne said daycare had noticed

---

[3] Thorne had previously pled guilty to endangering children and was awaiting sentencing at the time of Appellant's trial. (*Id.* at p. 660-661).

bruising on the minor child's face on December 26, 2019. (*Id.* at p. 678). Thorne stated Appellant told her the minor child hit the coffee table while playing. (*Id.* at p. 678-679). Thorne took the minor child to Akron Children's Hospital where he was admitted. (*Id.* at p. 684). The minor child was released with a safety plan in place. (*Id.* at p. 688). Regarding the January 2020 incident, Thorne again noted daycare had discovered markings on the minor child which appeared to be bruises and a rash. (*Id.* at p. 679-680). Following termination of the safety plan, Thorne and the minor child moved in with Appellant in February 2020. (*Id.* at p. 690).

**{¶13}** With respect to the March 2020 incident, Thorne noticed on the 8th that the minor child's head looked a little swollen. (*Id.* at p. 703). The following morning, Thorne said the minor child woke up with a black eye. (*Id.* at p. 699, 710). Appellant believed it may have been caused by the minor child's Pack 'n Play being against a bed frame. (*Id.* at p. 711). On March 10, 2020, Thorne went to have her car repaired and left the minor child with Appellant. (*Id.* at p. 717, 1122-1123). After Thorne returned, the minor child was sleeping and Appellant left for work. (*Id.* at p. 718). When the minor child awoke, Thorne discovered significant injuries to the child and immediately texted and sent photos to Appellant asking him what had happened. (*Id.* at p. 720). Appellant told Thorne the minor child had thrown a temper tantrum and had been banging his head on the floor. (*Id.*) Thorne texted her brother, Uncle Michael, asking for help because she believed Appellant had been hurting the minor child. (*Id.* at p. 234, 728; Exhibits 8 and 9). Thorne also texted her friend Lang about the markings on the minor child. (*Id.* at p. 713-714).

**{¶14}** Lang testified about communications she had with Thorne. Lang revealed what she learned about the Children Services' investigation surrounding the December 2019 incident. (*Id.* at p. 825-826). Text messages were exchanged between Thorne and Lang in March concerning the alleged abuse and what Thorne should do. (*Id.* at p. 836-837). Lang indicated Thorne wanted to leave Appellant but was "scared of how he would react." (*Id.* at p. 837). Thorne ended up contacting the police and the minor child was taken to East Liverpool Hospital, then taken to UPMC via life-flight. (*Id.*) Thorne texted Lang she was glad she was "outta there" and believed the minor child would have "wound up dead one day." (Exhibit 35). Lang texted Appellant, "You know [Thorne] didn't do that to [the minor child.]" (Exhibit 63). Lang told Appellant to "quit lying and saying that

[Thorne] did this to [the minor child]. You know that she didn't do this to him." (*Id.* at p. 838).

{¶15} Detective Morgan testified regarding the December 2019 incident that Thorne left the minor child alone with Appellant while she went to work on Christmas day. (*Id.* at p. 857). Thorne told Detective Morgan that Appellant called her to report the minor child had fallen and hit his head on a coffee table. (*Id.* at p. 857-858). Regarding the January 2020 incident, Thorne told Detective Morgan about daycare noticing bruising on the minor child. (*Id.* at p. 858). With respect to the March 2020 incident, Detective Morgan relayed that Thorne left the minor child with Appellant while she went to get her car repaired and when she returned home, the child's black eye had gotten worse. (*Id.* at p. 877). Thorne alleged Appellant told her the minor child had a temper tantrum. (*Id.* at p. 878). Detective Morgan also mentioned text message exchanges between Thorne and Uncle Michael and Thorne and Lang. (*Id.* at p. 880, 909-912).

{¶16} Detective Morgan indicated that doctors were suspicious of child abuse and found the injuries inconsistent with the minor child hitting a coffee table. (*Id.* at p. 862). Following a phone conference with Dr. Eichman, Detective Morgan understood that the March 2020 injuries "were from somebody violently grabbing the [minor] child by the hair." (*Id.* at p. 902). Dr. Eichman "couldn't rule out the possibility of blunt - - blunt force trauma being involved, as well." (*Id.* at p. 902-903). Detective Morgan interviewed Thorne on March 16, 2020. (*Id.* at p. 905). Detective Morgan expressed his conclusion that Appellant was responsible for the minor child's abuse. (*Id.* at p. 1022).

{¶17} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶18} Appellant testified and presented four witnesses: (1) Alfred Loker, II, Appellant's brother ("Loker"); (2) Hailey Browning, Appellant's daughter ("Ms. Browning"); (3) Michael Cunningham, Appellant's friend ("Cunningham"); and (4) Kim Gadd, a pastor at Appellant's church, House of Prayer in East Liverpool ("Reverend Gadd").

{¶19} Appellant testified the minor child struck his head on a coffee table on Christmas day. (*Id.* at p. 1082). Appellant said the minor child suffered an ear infection in January 2020. (*Id.* at p. 1099). Appellant also said the minor child's head appeared swollen on March 7, 2020, the day they attended a track meet. (*Id.* at p. 1110).

{¶20} Loker testified Thorne yelled at the minor child on March 8, 2020 after he had fallen down the steps. (*Id.* at p. 1226-1229). Ms. Browning testified she noticed the minor child had a black eye in March 2020. (*Id.* at p. 1239). Cunningham and Reverend Gadd opined Appellant has a good reputation for truthfulness. (*Id.* at p. 1253-1254, 1263).

{¶21} At the conclusion of all of the evidence, Appellant renewed the Crim.R. 29 motion for acquittal, which was overruled by the trial court.

{¶22} The jury found Appellant guilty on both counts as charged in the indictment.

{¶23} On July 6, 2021, the trial court sentenced Appellant to an indefinite prison term of six years (minimum) to nine years (maximum) for felonious assault and endangering children. Appellant was granted 17 days of jail-time credit. The court further notified Appellant that he is subject to three years of mandatory post-release control.

{¶24} Appellant filed a timely appeal and raises two assignments of error.

## ASSIGNMENT OF ERROR NO. 1

## MR. BROWNING'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶25} In his first assignment of error, Appellant argues his trial counsel rendered ineffective assistance, thereby violating his state and constitutional rights to due process and a fair trial. Appellant stresses the following: (1) an inaccurate criminal history for Appellant was admitted into evidence by way of three narrative medical reports; (2) the admission of Thorne's hearsay statements through medical experts and the lead detective is reversible error; (3) defense counsel should have requested a jury instruction regarding a testifying accomplice; (4) defense counsel should have objected to the prosecutor expressing personal beliefs; and (5) the cumulative error resulting from the deficiencies of trial counsel cannot be ignored and is inherently prejudicial.

{¶26} "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052 (1984).

In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland* [*, supra*]. Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.

To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or

the proceeding was fundamentally unfair as a result of the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

\* \* \*

[A]n ineffective assistance of counsel claim cannot be predicated upon supposition. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing *State v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

*State v. Rivers*, 7th Dist. Mahoning No. 17 MA 0078, 2019-Ohio-2375, ¶ 20-23, 27.

**{¶27}** First, Appellant alleges his "trial counsel failed to object to the admission of multiple exhibits containing an inaccurate criminal history for [him]." (5/10/2022 Appellant's Brief, p. 13). Specifically, Appellant takes issue with the expert reports of Nurse Practitioner Gorsuch and Dr. McPherson (Exhibits 28, 29, and 30). (*Id.* at p. 13-14). Appellant clarifies, however, that only two exhibits contain his inaccurate criminal history (Exhibits 28 and 30). (9/26/2022 Appellant's Reply Brief, p. 3, fn. 1).

When a claim for ineffective assistance of counsel is made based on failure to file an objection or a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success. If the objection or motion would not have been successful, then the appellant cannot prevail on the ineffective assistance of counsel claim. *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577, ¶ 14 (4th Dist.).

*State v. Saffell*, 7th Dist. Jefferson No. 19 JE 0021, 2020-Ohio-7022, ¶ 51.

**{¶28}** "[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988); *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995).

**{¶29}** Regarding Dr. McPherson's report (Exhibit 29), there is no reference to Appellant's criminal history. Regarding Nurse Practitioner Gorsuch's reports (Exhibits 28 and 30), references to Appellant's criminal history are noted under sections titled, "Social History." (Exhibit 28, p. 2; Exhibit 30, p. 2). Those portions of the reports contain information about the minor child's living arrangements, identity of caregivers, notations about domestic violence, family history of substance abuse, and incarcerations. (*Id.*) Under "Incarcerations," notations are made referencing the criminal histories of Thorne, the minor child's biological father, and Appellant. (*Id.*) Specifically, Exhibits 28 and 30 both state: "Incarcerations: [Thorne] for obstructing justice. [Biological] Father has extensive criminal drug possession, domestic violence, burglary, falsification, receiving stolen property. [Appellant] has a criminal history including arrests for DUI, Drug possession, Felonious assault, concealed weapon." (*Id.*)

**{¶30}** Appellant stresses his criminal history in the exhibits is inaccurate and that the trial testimony established he has two convictions for possession of drugs. The exhibits note a history of criminal offenses, not convictions. The State did not inquire of Appellant about any other arrests and/or convictions.

**{¶31}** In support of his argument alleging reversible error, Appellant relies on *State v. Nichols*, 116 Ohio App.3d 759 (10th Dist.1996). Appellant's reliance on that case, however, is misplaced. In *Nichols*, a detective actually testified at length to numerous other offenses committed by the defendant. (*Id.* at p. 765-766). The Tenth District held the only possible purpose of the detective's testimony about the other offenses was to show a predisposition to commit the charged offenses. (*Id.*) Although the record and facts in the case at bar support Appellant's position with respect to a redaction regarding his inaccurate criminal history and/or an objection by his counsel, we stress that the failure to redact and/or object did not rise to the level of prejudice. Unlike *Nichols*, the portions of the expert reports to which Appellant now objects were not highlighted or even addressed during the testimony at trial. Rather, the expert reports in the case sub judice were introduced and admitted to address the non-accidental nature of the minor child's injuries. There was no effort or probative purpose to show a predisposition to commit these offenses as a result of the "Social History" narrative contained in the reports at issue.

Case No. 21 CO 0026

**{¶32}** Appellant fails to establish that a lack of a redaction regarding his inaccurate criminal history and/or his trial counsel's failure to object to the admission of Exhibits 28, 29, and 30 prejudiced him or that the outcome of the trial would have been different but for the claimed error.

**{¶33}** Second, Appellant asserts his "trial counsel failed to object to hearsay testimony from expert witnesses and the lead detective in the criminal investigation, which resulted in improper bolstering of the testimony of the alleged victim's mother, Michaele Thorne." (5/10/2022 Appellant's Brief, p. 15).

**{¶34}** Evid.R. 801(C) states: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**{¶35}** Evid.R. 802 provides: "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

**{¶36}** Evid.R. 803 states in part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid.R. 803(4).

**{¶37}** Here, Thorne, the declarant, was present, testified, and was subject to full cross-examination at trial. The jury had the opportunity to judge Thorne's credibility based

Case No. 21 CO 0026

on her testimony.  Appellant also testified which afforded the jury the opportunity to judge his credibility as well.

**{¶38}** Detective Morgan's testimony is not hearsay.  He investigated the incidents involving the minor child and gathered information.  As addressed, Detective Morgan's testimony regarding the investigation included statements of Thorne, Appellant, and other witnesses he interviewed.  His testimony was offered to explain his investigative actions, not to prove the truth of the matter asserted.

**{¶39}** The medical experts, including Dr. McPherson, Dr. Eichman, and Nurse Practitioner Gorsuch, related the history about the minor child provided to them by Thorne.  The medical experts were called upon to make a medical diagnosis regarding whether the minor child had been physically abused or whether the injuries were self-inflicted and/or the result of accidental trauma.  The medical experts considered the medical history provided each time the minor child presented for treatment.  Thorne was the party present with the minor child at the medical facilities when they sought treatment. The minor child was only two years old and developmentally unable to provide his own medical history.  As his mother, Thorne provided that medical history as statements made for purposes of medical treatment or diagnosis which falls within the hearsay exception under Evid.R. 803(4).  Nothing in the language of the rule itself limits the exception statements made by the patient.

**{¶40}** Even if deemed to be hearsay, the admission of the testimony of the lead detective and medical experts did not rise to the level of plain error.  *See State v. Jackson*, 7th Dist. Columbiana No. 19 CO 0050, 2021-Ohio-1157, ¶ 25 ("Under Crim.R. 52(B), plain error exists only where there is an obvious deviation from a legal rule that affected the outcome of the proceeding.")  Appellant fails to demonstrate that but for the admission of such testimony, the outcome of the trial would have been different.

**{¶41}** Third, Appellant maintains his "trial counsel was ineffective for failing to request a mandatory accomplice testimony instruction."  (5/10/2022 Appellant's Brief, p. 20).

**{¶42}** R.C. 2923.03, "Complicity," states in part:

(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the

commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

R.C. 2923.03(D).

**{¶43}** According to common usage, the term "accomplice" means:

"* * * (O)ne who *is guilty* of complicity in crime charged, either by being present and aiding or abetting in it, or having advised and encouraged it, though absent from place when it was committed, though mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough, no matter how reprehensible it may be, to constitute one an accomplice. One is liable as an accomplice to the crime of another if he gave assistance or encouragement or failed to perform a legal duty to prevent it with the intent thereby to promote or facilitate commission of the crime. * * *" (Emphasis added.) Black's Law Dictionary (5 Ed.1979) 16.

Certainly, a person who *is guilty* of complicity must first be *found* guilty of complicity by either a judge or a jury. Obviously, the first step in finding a person guilty of an offense is by indicting that person. So, at the very least, an "accomplice" must be a person indicted for the crime of complicity.

*State v. Wickline*, 50 Ohio St. 3d 114, 117-18, 552 N.E.2d 913, 918 (1990).

Case No. 21 CO 0026

**{¶44}** In the case at bar, Thorne was never indicted for the crime of complicity and therefore, she could not have been an "accomplice" to either the felonious assault or endangering children counts for which Appellant was convicted and sentenced. Rather, Thorne was charged and pled guilty to endangering children, i.e., with her own conduct of violating a duty of care, protection, or support of her minor child and specifically for failing to protect the minor child from Appellant. (6/14/2021 Trial by Jury Tr., p. 660). Thorne was not testifying as an accomplice nor seeking to gain any advantage in her own case. The record reveals Thorne pled guilty as charged and that a prison sentence was being recommended by the State. (*Id.* at p. 661). Thorne indicated she wanted justice for the minor child and that is why she was testifying voluntarily. (*Id.* at p. 779).

**{¶45}** Fourth, Appellant argues his "trial counsel's failure to object to prosecutorial misconduct in the State's close constitutes ineffective assistance of counsel." (5/10/2022 Appellant's Brief, p. 22).

> When reviewing a claim of prosecutorial misconduct in closing arguments, the reviewing court evaluates whether remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The prosecution is afforded wide latitude in summation. *Id.* Contested statements made during closing arguments are not viewed in isolation but are read in context of the entire argument and the entire case. *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001); *State v. Rahman*, 23 Ohio St.3d 146, 154, 492 N.E.2d 401 (1986) (also noting if the Court were to find "every remark made by counsel outside of the testimony were grounds for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation").

*State v. Hymes*, 7th Dist. Mahoning No. 19 MA 0130, 2021-Ohio-3439, ¶ 82.

**{¶46}** "A prosecutor may state his opinion if it is based on the evidence presented at trial." *State v. Mieczkowsk*, 7th Dist. Jefferson No. 17 JE 0016, 2018-Ohio-2775, ¶ 78, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 213. The mere

use of "I bet," "I believe," or "I think" phrases does not necessarily constitute an expression of personal opinion and must be viewed in the context used. *See, e.g., State v. Loch*, 10th Dist. Franklin No. 02AP-1065, 2003-Ohio-4701, ¶ 52. "While the prosecutor may not state a personal belief, every time the pronoun "I" is used is not a violation-e.g., 'I invite you to consider (* * *)'; 'I appreciate your attention (* * *)'; 'I believe, when all the evidence is in, you will (* * *).'" *State v. Walker*, 1st Dist. Hamilton No. C-010515, 2002-Ohio-3535, ¶ 15.

**{¶47}** Appellant takes issue with two "I believe" comments and one "I don't think so comment" made by the prosecutor during closing argument, as follows:

> Ladies and gentlemen, I believe that all of the evidence that has been presented to you points in one direction, and one direction only, and that's in the direction of Tom Browning. He is the individual that perpetrated this pattern of abuse on [the minor child] between the timeframe of December 25th, 2019, and March 11th, 2020. And I'd ask you to return the only verdict supported by that evidence, and that is a verdict of guilty on both counts.

(6/14/2021 Trial by Jury, Tr., p. 1296).

> And, ladies and gentlemen, I submit to you, without hesitation, that I believe the evidence that was presented in this courtroom establishes, beyond a reasonable doubt, that this Defendant, between the dates of December 25th, 2019, and March 11th, 2020, abused [the minor child], and that abuse resulted in serious physical harm.

(*Id.* at p. 1334).

> [The defendant] was frustrated with this child and with the behavior. It was the worst tantrum he'd ever had. And he left the child, that he believed had head injuries that needed medical attention to the point where he was fighting with his girlfriend about it, unattended? Really? I don't think so. I don't think that's what a responsible person does, and it doesn't make sense.

Case No. 21 CO 0026

(*Id.* at p. 1287).

**{¶48}** The foregoing "I believe" comments read in context do not constitute the personal opinion of the prosecutor. Rather, they refer to the evidence presented at trial and the prosecutor's belief based on the evidence. The "I don't think so" comment was also made during closing that, read in context, challenged the reasonableness of Appellant's testimony. These comments were not improper nor did they prejudice Appellant.

**{¶49}** Appellant also alleges his trial counsel invited a finding of guilt and takes issue with a "double negative" comment made by his counsel during closing argument, as follows:

> And I'm going to ask that, on behalf of my client, that you find that the State of Ohio - - when you look at the State of Ohio's case, and says, "Look, they haven't convinced me. They haven't given me that evidence that I could go back, beyond a reasonable doubt. They haven't given me that evidence of such a character that I could find a not guilty verdict when they ask me to do so."

(*Id.* at p. 1332).

**{¶50}** To isolate a single, unintentional word or phrase from the context of a thorough and lengthy closing argument delivered by trial counsel is unfair and unreasonable. Reading trial counsel's closing argument in its entirety, it is clear he acted in Appellant's best interest. It is also clear trial counsel was arguing the State had failed to meet its burden of proof beyond a reasonable doubt and any double negative used was unintentional and did not prejudice Appellant. We fail to find any reversible misconduct by the prosecutor or by trial counsel during closing arguments.

**{¶51}** Fifth, Appellant additionally alleges "the cumulative effect of the aforementioned deficiencies by trial counsel deprived [him] of a fair trial." (5/10/2022 Appellant's Brief, p. 24).

> Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of error during a trial deprives a defendant of a fair trial

Case No. 21 CO 0026

even though each of the alleged instances of error do not individually constitute cause for reversal. *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). An error-free, perfect trial does not exist, and is not guaranteed by the Constitution. *State v. Hill,* 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996). In order to find cumulative error, a record must contain multiple instances of harmless error. *State v. Austin,* 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 64. When an appellate court determines no error has occurred, the doctrine cannot apply. *State v. Lyons,* 7th Dist. Jefferson No. 16 JE 0008, 93 N.E.3d 139, 2017-Ohio-4385, ¶ 46.

*State v. Italiano*, 7th Dist. Mahoning No. 19 MA 0095, 2021-Ohio-1283, ¶ 35.

**{¶52}** As we find no error in any of Appellant's arguments, his contention based on cumulative error clearly has no merit. *Id.*

**{¶53}** Upon consideration, the record establishes trial counsel's representation was constitutionally effective and did not affect Appellant's rights. Counsel's performance was neither deficient nor prejudicial. Appellant fails to demonstrate ineffective assistance of counsel. *See Strickland, supra.*

**{¶54}** Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶55}** In his second assignment of error, Appellant contends the jury verdicts finding him guilty of felonious assault and endangering children were against the manifest weight of the evidence.

In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage

of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 47-48.

**{¶56}** "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

**{¶57}** Again, Captain Wright testified Thorne told him about injuries she had observed on the minor child. (6/14/2021 Trial by Jury Tr., p. 214). Wright revealed Thorne delayed reporting the abuse by indicating to Detective Morgan that she was scared of Appellant. (*Id.* at p. 225).

**{¶58}** Uncle Michael exchanged text messages with Thorne in which Thorne had indicated the minor child was hurt and she believed Appellant was to blame. (*Id.* at p. 234-235; Exhibits 8 and 9). Uncle Michael replied, "'I knew it,'" and said he was not surprised. (*Id.* at p. 235-236; Exhibits 8 and 9).

**{¶59}** Preschool Administrator Boss testified she reported signs of potential physical abuse to Children Services on December 26, 2019 after discovering bruises on the minor child's face and red marks on his arms and legs. (*Id.* at p. 310). On Monday, January 20, 2020, Boss discovered bruising on the minor child's face. (*Id.* at p. 319). The minor child had been at Appellant's home the weekend prior to January 20, 2020. (*Id.* at p. 682, 1091).

**{¶60}** Investigator Beverly was assigned to investigate this case on March 12, 2020. (*Id.* at p. 353). Beverly discussed Dr. Eichman's findings and opinion that the

injuries, including black and blue marks, sustained in the March 2020 incident were intentionally inflicted upon the minor child. (*Id.* at p. 359-360). Beverly confirmed the two people with access to the minor child during this time period were Thorne and Appellant. (*Id.* at p. 376). Beverly revealed Thorne was concerned for the minor child's safety while in the care of Appellant. (*Id.*) Beverly also revealed Nurse Practitioner Gorsuch's findings that the injuries the minor child sustained in the December 2019 incident were inconsistent with the child striking his head on a coffee table, as alleged by Appellant. (*Id.* at p. 381). Beverly opined the minor child's Pack 'n Play was not the source of his injuries, as speculated by Appellant. (*Id.* at p. 405). Beverly stated the minor child's grandmother and great-grandmother had concerns about Appellant and did not believe Thorne hurt the child. (*Id.* at p. 490-492).

**{¶61}** Nurse Practitioner Gorsuch testified regarding Thorne's statements that the minor child sustained injuries while he was left in Appellant's care. (*Id.* at p. 524). Gorsuch opined the injuries sustained in the December 2019 incident were "highly concerning for child abuse." (*Id.* at p. 530).

**{¶62}** Dr. Eichman testified that Thorne revealed she had noticed physical injuries on the minor child after being left in Appellant's care in December 2019 and March 2020. (*Id.* at p. 574, 584-585). Dr. Eichman repeated Thorne's assertion that she thought Appellant had hurt the minor child. (*Id.* at p. 588). Dr. Eichman concluded the injuries to the minor child included a subgaleal hemorrhage, multiple contusions on the face and ears, and swelling of the head. (*Id.* at p. 568). Dr. Eichman opined Appellant's explanation of a temper tantrum did not explain the minor child's injuries and that the child had been a victim of physical abuse on multiple occasions. (*Id.* at p. 597).

**{¶63}** Dr. McPherson testified regarding reports by Thorne of the January 2020 incident with respect to bruises and rashes on the minor child and speculation as to how they may have occurred. (*Id.* at p. 620). Dr. McPherson opined the injuries to the minor child were highly concerning for physical abuse. (*Id.* at p. 636).

**{¶64}** Thorne described the injuries she observed in relation to each of the three incidents and implicated Appellant by alleging the injuries must have occurred while Appellant was watching the minor child. Thorne said daycare had noticed bruising on the minor child's face on December 26, 2019. (*Id.* at p. 678). Thorne took the minor child to

the hospital where he was admitted and released with a safety plan in place. (*Id.* at p. 684, 688). Regarding the January 2020 incident, Thorne again noted daycare had discovered markings on the minor child which appeared to be bruises and a rash. (*Id.* at p. 679-680). Following termination of the safety plan, Thorne and the minor child moved in with Appellant in February 2020. (*Id.* at p. 690).

**{¶65}** With respect to the March 2020 incident, Thorne noticed on the 8th that the minor child's head looked a little swollen. (*Id.* at p. 703). The following morning, Thorne said the minor child woke up with a black eye. (*Id.* at p. 699, 710). On March 10, 2020, Thorne went to have her car repaired and left the minor child with Appellant. (*Id.* at p. 717, 1122-1123). After Thorne returned, the minor child was sleeping and Appellant left for work. (*Id.* at p. 718). When the minor child awoke, Thorne discovered significant injuries to the child and immediately texted and sent photos to Appellant asking him what had happened. (*Id.* at p. 720). Appellant told Thorne the minor child had thrown a temper tantrum and had been banging his head on the floor. (*Id.*) Thorne texted her brother, Uncle Michael, asking for help because she believed Appellant had been hurting the minor child. (*Id.* at p. 234, 728; Exhibits 8 and 9). Thorne also texted her friend Lang about the markings on the minor child. (*Id.* at p. 713-714).

**{¶66}** Lang indicated Thorne wanted to leave Appellant but was "scared of how he would react." (*Id.* at p. 837). Thorne ended up contacting the police and the minor child was taken to East Liverpool Hospital, then taken to UPMC via life-flight. (*Id.*) Thorne texted Lang she was glad she was "outta there" and believed the minor child would have "wound up dead one day." (Exhibit 35). Lang texted Appellant, "You know [Thorne] didn't do that to [the minor child.]" (Exhibit 63). Lang told Appellant to "quit lying and saying that [Thorne] did this to [the minor child]. You know that she didn't do this to him." (*Id.* at p. 838).

**{¶67}** Detective Morgan testified regarding the December 2019 incident that Thorne left the minor child alone with Appellant while she went to work on Christmas day. (*Id.* at p. 857). Thorne told Detective Morgan that Appellant called her to report the minor child had fallen and hit his head on a coffee table. (*Id.* at p. 857-858). Regarding the January 2020 incident, Thorne told Detective Morgan about daycare noticing bruising on the minor child. (*Id.* at p. 858). With respect to the March 2020 incident, Detective Morgan

relayed that Thorne left the minor child with Appellant while she went to get her car repaired and when she returned home, the child's black eye had gotten worse. (*Id.* at p. 877). Thorne alleged Appellant told her the minor child had a temper tantrum. (*Id.* at p. 878).

**{¶68}** Detective Morgan indicated that doctors were suspicious of child abuse and found the injuries inconsistent with the minor child hitting a coffee table. (*Id.* at p. 862). Following a phone conference with Dr. Eichman, Detective Morgan understood the March 2020 injuries "were from somebody violently grabbing the [minor] child by the hair." (*Id.* at p. 902). Dr. Eichman "couldn't rule out the possibility of blunt - - blunt force trauma being involved, as well." (*Id.* at p. 902-903). Detective Morgan interviewed Thorne on March 16, 2020. (*Id.* at p. 905). Detective Morgan expressed his conclusion that Appellant was responsible for the minor child's abuse. (*Id.* at p. 1022).

**{¶69}** The jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of felonious assault and endangering children. *Thompkins, supra*, at 387.

**{¶70}** Appellant's second assignment of error is without merit.

## <u>CONCLUSION</u>

**{¶71}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The July 6, 2021 judgment of the Columbiana County Court of Common Pleas convicting and sentencing Appellant to an indefinite prison term of six years (minimum) to nine years (maximum) for felonious assault and endangering children following a trial by jury is affirmed.

Robb, J., concurs.

Hanni, J., concurs.

Case No. 21 CO 0026

[Cite as *State v. Browning*, 2023-Ohio-890.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**