# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DECHAUN TOLIVER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 NO 0524**

---

Criminal Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 224-2015

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordan C. Croucher, Noble County Prosecutor,* for Plaintiff-Appellee and

Dechaun Toliver*, Defendant-Appellant.*

Dated:  October 23, 2025

**DICKEY, J.**

{¶1} Pro se Appellant, Dechaun E. Toliver, appeals from the March 11, 2025 judgment of the Noble County Court of Common Pleas convicting him of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance) and sentencing him to 24 months in prison, consecutive to an unrelated term of incarceration, following a jury trial. On appeal, Appellant raises arguments involving sufficiency of the evidence, prosecutorial misconduct, and equal protection. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} On March 6, 2024, Appellant, while incarcerated at the Noble Correctional Institution ("NCI"), Inmate No. A745714, was secretly indicted by the Noble County Grand Jury on one count of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance), a felony of the third degree in violation of R.C. 2921.36(A)(2) and (G)(2). Appellant was appointed counsel and pled not guilty at his arraignment.

{¶3} On August 9, 2024, Appellant filed a motion to dismiss the indictment based on three grounds: (1) Appellant believes that an essential element of the charge against him is that the conveyance must be onto the grounds of a detention facility, to wit, NCI; (2) that the conveyance was interrupted via interdiction by officers of NCI and/or the Ohio State Highway Patrol ("Highway Patrol"); and (3) there is no evidence that he placed the illicit drugs along the highway nor was the conveyance to NCI ever accomplished. Appellee, the State of Ohio, filed a response one week later. On November 4, 2024, the trial court overruled Appellant's motion to dismiss and set the matter for a jury trial.

{¶4} A jury trial was held on March 6-7, 2025. The State presented five witnesses: (1) Jared McGilton, the Investigator Administrative Warden's Assistant at NCI; (2) Zachary Lee, a criminalist at the Highway Patrol Crime Lab; (3) Eric Mullins, a Parole Officer for the State; (4) Trenas Weaver, a Highway Patrol Trooper; and (5) Catlin Cutlip, who grew up together with Appellant, his co-defendant, and described him "[l]ike, [her] brother[.]" (3/6-7/2025 Jury Trial Tr., p. 313). Numerous State Exhibits were admitted into evidence including: Exhibit A (nine audio files); Exhibits B-1 to B-3 (videos); Exhibits

C-1 to C-21 (photographs); Exhibit D-1 (Highway Patrol Criminalist Lee's report); and Exhibit D-2 (packaging of substances analyzed).

{¶5} NCI inmates, including Appellant, worked as part of a clean-up crew and were permitted beyond the fence of NCI for the purpose of cleaning up trash and debris along Interstate 77. Upon completion of their trash pickup, inmates were transported back to NCI.

{¶6} On August 28, 2022, Cutlip, Appellant's co-defendant, traveled to Noble County in possession of CH-PIATA, a Schedule I synthetic cannabinoid, concealed in various balloons. Cutlip concealed the balloons containing the narcotics into a bag of trash. She tossed the trash bag onto the side of Interstate 77 near a billboard just north of Exit 25.

{¶7} Before, during, and after Cutlip completed the narcotics drop, phone calls between herself and Appellant were reviewed. Cutlip and Appellant engaged in several discussions. Appellant initially advised Cutlip that he needed her assistance and that he would pay her approximately $2,000 for her role. They discussed how to properly conceal the narcotics in trash and where to deposit the concealed narcotics. Cutlip confirmed that Appellant's intention in hiring her was for her to assist him in bringing "papers" into NCI. (3/6-7/2025 Jury Trial Tr., p. 313).

{¶8} Cutlip and Appellant discussed items referred to as "suits" and "papers" in reference to Suboxone strips and the paper that is soaked in synthetic drugs. (*Id.* at p. 143). Cutlip and Appellant further discussed utilizing a fast-food bag, packaging the narcotics in a Ziploc baggy before depositing them in a fast-food bag, then into a large garbage bag, and leaving the collection of items on Interstate 77 near a billboard just north of Exit 25. Cutlip was to notify Appellant that the drop was successful. All of Cutlip's activities were found to be at Appellant's direction.

{¶9} During the narcotics drop, Appellant attempted to conceal his involvement by switching to a separate phone PIN provided to another inmate. NCI Investigator McGilton was able to positively identify the parties by the phone numbers involved, the PIN numbers, and their voices. Members of the Highway Patrol and NCI Investigative Unit were stationed in various locations around the suspected drop site. The Highway Patrol visually observed and identified Cutlip and her vehicle.

{¶10} After Cutlip deposited the narcotics in trash along Interstate 77, law enforcement secured the narcotics and replaced them with a fictitious package so that they could further observe the involvement of any other potential inmates. Inside the large garbage bag was a series of balloons containing what was believed by law enforcement personnel to be illegal narcotics. That suspicion was ultimately confirmed. Highway Patrol Criminalist Lee testified that the substance provided to the lab was tested by him and was found to contain CH-PIATA, a synthetic cannabinoid and a Schedule I controlled substance. Upon retrieval of the illegal narcotics, a fictitious package was used to replace the original.

{¶11} The next day, members of the Highway Patrol and NCI Investigative Unit were again stationed for observation. Law enforcement and investigators observed only Appellant approach and retrieve the trash bag at issue, left by Cutlip the day before, including the package of fictitious drugs.

{¶12} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court. The defense rested without presenting evidence.

{¶13} The jury found Appellant guilty on the sole count of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance) as contained in the indictment.

{¶14} On March 11, 2025, the trial court sentenced Appellant to serve 24 months in prison, consecutive to an unrelated term of incarceration. The court also advised Appellant that he may be subject to post-release control for up to two years.

{¶15} Appellant filed a timely pro se appeal and raises four assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION. THE STATE DID NOT PROVE THE ESSENTIAL ELEMENTS OF THE CRIME BEYOND A REASONABLE DOUBT, INSTEAD RELIED ON "SPECULATION & CONJECTURE" OF WHAT THEY BELIEVE WAS GOING TO HAPPEN NEXT. THE STATE EVEN ALLEGES THAT APPELLANT DID NOT COMMIT THE CRIME.**

**ASSIGNMENT OF ERROR NO. 2**

**THE CONVICTION IS BASED UPON A RECORD WHOLLY DEVOID OF A CRUCIAL ELEMENT OF THE OFFENSE CHARGED, VIOLATING APPELLANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS UNDER THE U.S. CONSTITUTION AND OHIO CONSTITUTION ART. I, SECTION 16.**

{¶16} In his first assignment of error, Appellant argues his conviction for illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance) is not supported by sufficient evidence. Specifically, Appellant claims the elements of "knowingly convey, or attempt to convey," a "drug of abuse," and "onto the grounds of a detention facility" were not proven beyond a reasonable doubt. *See* R.C. 2921.36(A)(2).

{¶17} In his second assignment of error, Appellant contends his due process rights were violated based on a belief that his conviction rests upon a record devoid of a crucial element, i.e., the narcotics did not successfully reach the grounds of NCI.

{¶18} Because Appellant's first and second assignments of error involve challenges to the sufficiency of the evidence, we will consider them together for ease of discussion.

> "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*State v. T.D.J.*, 2018-Ohio-2766, ¶ 46 (7th Dist.).

{¶19} "'[C]ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *Jenks* at paragraph one of the syllabus.

{¶20} For the reasons addressed below, we determine the judgment is supported by sufficient evidence.

{¶21} Appellant takes issue with the guilty finding for illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance), a felony of the third degree in violation of R.C. 2921.36(A)(2) and (G)(2), which states:

> (A) No person shall knowingly convey, *or attempt to convey*, onto the grounds of a detention facility or of an institution, office building, or other place that is under the control of the department of mental health and addiction services, the department of developmental disabilities, the department of youth services, or the department of rehabilitation and correction any of the following items:
>
> . . .
>
> (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code;
>
> . . .
>
> (G)(2) Whoever violates division (A)(2) of this section or commits a violation of division (C) of this section involving any drug of abuse is guilty of illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility, a felony of the third degree….

(Emphasis added). R.C. 2921.36(A)(2) and (G)(2).

{¶22} The term "knowingly" is defined in R.C. 2901.22(B) as follows: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

Case No. 25 NO 0524

{¶23} R.C. 2923.02, "Attempt," provides in part: "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶24} R.C. 3719.011(A) states: "'Drug of abuse' means any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised Code."

{¶25} R.C. 3719.01(C) states: "'Controlled substance' means a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V."

{¶26} In this case, the State presented sufficient evidence establishing Appellant committed the charged offense of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance). The Revised Code is clear that convictions under the principal statute are proper even for attempted efforts at such conduct. *See* R.C. 2921.36(A)(2) and (G)(2).

{¶27} As stated, before, during, and after Cutlip completed the narcotics drop, phone calls between herself and Appellant were reviewed. Cutlip and Appellant engaged in several discussions. Appellant initially advised Cutlip that he needed her assistance and that he would pay her approximately $2,000 for her role. They discussed how to properly conceal the narcotics in trash and where to deposit the concealed narcotics. Cutlip confirmed that Appellant's intention in hiring her was for her to assist him in bringing "papers" into NCI. (3/6-7/2025 Jury Trial Tr., p. 313).

{¶28} Cutlip and Appellant discussed items referred to as "suits" and "papers" in reference to Suboxone strips and the paper that is soaked in synthetic drugs. (*Id.* at p. 143). Cutlip and Appellant further discussed utilizing a fast-food bag, packaging the narcotics in a Ziploc baggy before depositing them in a fast-food bag, then into a large garbage bag, and leaving the collection of items on Interstate 77 near a billboard just north of Exit 25. Cutlip was to notify Appellant that the drop was successful. All of Cutlip's activities were found to be at Appellant's direction.

{¶29} During the narcotics drop, Appellant attempted to conceal his involvement by switching to a separate phone PIN provided to another inmate. NCI Investigator

McGilton was able to positively identify the parties by the phone numbers involved, the PIN numbers, and their voices. Members of the Highway Patrol and NCI Investigative Unit were stationed in various locations around the suspected drop site. The Highway Patrol visually observed and identified Cutlip and her vehicle.

{¶30} After Cutlip deposited the narcotics in trash along Interstate 77, law enforcement secured the narcotics and replaced them with a fictitious package so that they could further observe the involvement of any other potential inmates. Inside the large garbage bag was a series of balloons containing what was believed by law enforcement personnel to be illegal narcotics. That suspicion was ultimately confirmed. Highway Patrol Criminalist Lee testified that the substance provided to the lab was tested by him and was found to contain CH-PIATA, a synthetic cannabinoid and a Schedule I controlled substance. Upon retrieval of the illegal narcotics, a fictitious package was used to replace the original.

{¶31} The next day, members of the Highway Patrol and NCI Investigative Unit were again stationed for observation. Law enforcement and investigators observed only Appellant approach and retrieve the trash bag at issue, left by Cutlip the day before, including the package of fictitious drugs.

{¶32} Contrary to Appellant's position, this case is not based entirely upon speculation and conjecture. Based on the facts presented, as addressed, Appellant did more than merely solicit Cutlip. Rather, Appellant took all action within his power, considering his incarceration, to ensure that the crime would be committed. *See, e.g., State v. Group*, 2002-Ohio-7247, ¶ 95-99. Appellant was the only inmate to approach and retrieve the trash bag at issue. Because Appellant's return destination was NCI it is clear that he was acting with the intent to illegally convey a drug of abuse onto the grounds of NCI. *See* R.C. 2921.36(A)(2) and (G)(2). All theories to the contrary are simply unreasonable.

{¶33} Pursuant to *Jenks,* 61 Ohio St.3d 259, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance) were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

{¶34} Appellant's first and second assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 3

**PROSECUTOR MISCONDUCT. PROSECUTORS' COMMENTS INFECTED THE TRIAL WITH UNFAIRNESS AS TO MAKE THE RESULTING CONVICTION A DENIAL OF DUE PROCESS. THE PROSECUTOR ENGAGED IN MISLEADING CONDUCT BY DELIBERATELY CHANGING THE THEORY OF THE PROSECUTION IN THE MIDDLE OF THE TRIAL & TAKING INCONSISTENT POSITIONS ON THE [APPELANT'S] ROLE IN THE SAME CRIME.**

{¶35} In his third assignment of error, Appellant alleges the prosecutor engaged in misconduct. Specifically, Appellant believes the following comments made by the prosecutor during closing arguments violated his due process rights: (1) "The statute provides that the action must be to either convey or attempt to convey onto the grounds of a specified government facility"; (2) "Item does not have to make its way onto the actual grounds"; (3) "There is no dispute that the drugs didn't make it onto the grounds of the facility"; and (4) "Find Dechaun Toliver guilty of illegal conveyance of drugs of abuse onto the grounds of Noble Correctional." (7/3/2025 Appellant's Brief, p. 19).

When reviewing a claim of prosecutorial misconduct in closing arguments, the reviewing court evaluates whether remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The prosecution is afforded wide latitude in summation. *Id.* Contested statements made during closing arguments are not viewed in isolation but are read in context of the entire argument and the entire case. *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001); *State v. Rahman*, 23 Ohio St.3d 146, 154, 492 N.E.2d 401 (1986) (also noting if the Court were to find "every remark made by counsel outside of the testimony were grounds for a reversal, comparatively few verdicts would stand, since in the

ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation").

*State v. Browning*, 2023-Ohio-890, ¶ 45 (7th Dist.), quoting *State v. Hymes*, 2021-Ohio-3439, ¶ 82 (7th Dist.).

{¶36} Appellant did not object to any of the prosecutor's comments.

"A claim of prosecutorial misconduct is waived unless raised at trial, and if so waived, can serve as the basis for relief only if the conduct constitutes plain error." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 24. Plain error is a discretionary doctrine to be used with the utmost care by the appellate court in exceptional circumstances to avoid a manifest miscarriage of justice where an obvious error affected substantial rights, meaning it was outcome determinative. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62, applying Crim.R. 52(B).

*Hymes* at ¶ 83.

{¶37} Upon review, the prosecutor's first comment regarding the statute is simply a proper, partial re-statement of R.C. 2921.36. *See* R.C. 2921.36(A)(2) ("No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or … other place that is under the control of the . . . department of rehabilitation and correction . . . [a]ny drug of abuse").

{¶38} The prosecutor's second comment is in regard to the fact that the item does not have to make its way onto the actual grounds. This comment is simply a statement with respect to the evidentiary requirements of R.C. 2921.36 with regard to an attempted conveyance of drugs of abuse onto the grounds of a specified governmental facility that is in line with existing Ohio case law. Any alleged confusion or error was clarified and/or cured by the trial court in its final jury instructions as follows:

Now, attempt. Attempt means to knowingly engage in conduct that if successful would constitute or result in that offense.

Case No. 25 NO 0524

A criminal attempt occurs when one purposely or knowingly does or admits or fails to do anything that is an act or an admission or failure constituting a substantial step in a course of conduct planned to culminate in his commission of the offense.

To constitute a substantial step the conduct must be strongly corroborative of the actor's criminal purpose or knowledge.

Preparing, planning or arranging the means for the commission of the crime does not constitute an attempt.

The act need not be the last proximate act prior to the commission of the offense.

This properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime while allowing police intervention based upon observation of such incriminating conduct in order to prevent the crime when the criminal intent becomes apparent.

(3/6-7/2025 Jury Trial Tr., p. 349-350).

{¶39} The prosecutor's third comment that "[t]here is no dispute that the drugs didn't make it onto the grounds of the facility" has been argued by Appellant himself. *See* (7/3/2025 Appellant's Brief, p. 3, 19).

{¶40} The prosecutor's fourth comment regarding finding Appellant guilty simply appears to be a proper final statement to the jury arguing in favor of a conviction based upon the evidence presented.

{¶41} Upon review, none of the above comments by the prosecutor during closing arguments amounts to plain error.

{¶42} Appellant's third assignment of error is without merit.

Case No. 25 NO 0524

**ASSIGNMENT OF ERROR NO. 4**

**[APPELLANT'S] EQUAL PROTECTION RIGHTS WERE VIOLATED BY BATSON VIOLATION, BECAUSE AFRICAN AMERICANS WERE TOTALLY EXCLUDED FROM THE JURY POOL.**

{¶43} In his fourth assignment of error, Appellant, a black male, claims error because the entire jury pool in his trial was white. Appellant stresses that African American men and African Americans in general were improperly excluded.

The racial makeup of a jury pool is contested through use of a "*Batson*" challenge, which has its genesis from United States Supreme Court law.

The Ohio Supreme Court has set out the steps for analyzing a race-based challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as follows:

First, the opponent of the peremptory strike must make a prima facie case of racial discrimination. Second, if the trial court finds that the opponent has fulfilled this requirement, then the proponent of the strike must come forward with a racially neutral explanation for the strike. . . . The 'explanation need not rise to the level justifying exercise of a challenge for cause.' (*Batson*, 476 U.S.) at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

Third, if the proponent puts forward a racially neutral explanation, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved purposeful racial discrimination. . . . The burden of persuasion is on the opponent of the strike. (Internal citations omitted.)

*State v. Herring*, 94 Ohio St.3d 246, 255-256, 2002-Ohio-796, 762 N.E.2d 940; *State v. Moore*, 7th Dist. Mahoning No. 22 MA 0013, 2023-Ohio-1000, ¶ 14, appeal not allowed, 170 Ohio St.3d 1494, 2023-Ohio-2407, 212 N.E.3d 951.

"An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous." *Moore* at ¶ 15, citing *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

*State v. Hill*, 2024-Ohio-1543, ¶ 21-22 (7th Dist.).

**{¶44}** As Appellant concedes in his brief, no African Americans were present in the jury panel called for trial in the case at bar. *See* (7/3/2025 Appellant's Brief, p. 19). No peremptory challenges were used by the State against African Americans and, inherently, no objection was made on these grounds. The trial judge asked if the jury was acceptable to Appellant and defense counsel answered, "Yes, Your Honor." (3/6-7/2025 Jury Trial Tr., p. 87). Because there was no objection raised at any point, no prima facie case of purposeful discrimination was established. Since Appellant's claim fails to meet the required burden, there is no equal protection violation. *Hill* at ¶ 21-22.

The United States Supreme Court has held that the Sixth Amendment guarantee of a jury trial "contemplates a jury drawn from a fair cross-section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

While this is the ideal scenario, Ohio law provides:

[N]o requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*State v. Johnson*, 88 Ohio St.3d 95, 117, 723 N.E.2d 1054, 1073 (2000), citing *Taylor, supra,* at 527.

*Hill* at ¶ 24-25.

{¶45} The State points out the following:

As an aside, the most recent available census data provides that Noble County has a population of approximately 14,269 people. U.S. Census Quick Facts, 2024. Of that population, an estimated 92% are white, while an estimated 5% are black. U.S. Census Data, 2020. At the time of Appellant's trial, data provided by the Ohio Department of Rehabilitation and Correction reveals that Eight Hundred Seventy-Three (873) inmates were black. ODRC Monthly Population Count, by Institution, March 2025 (03/04/2025). As inmates are considered in census data at the location in which they are housed rather than their home address, these inmates would account for approximately 6% of Noble County's population, effectively accounting for the entirety of the black population in Noble County. As inmates currently serving a prison term are ineligible for jury service, the potential for black jurors to be available in Appellant's jury pool is a virtual impossibility. *See State v. Frazier*, 2007-Ohio-5048, ¶ 69, stating, "'[appellant's] claims are also not supported by the 'bare statistics.' The absence of African-Americans on [appellant's] jury resulted from the few African-Americans randomly selected for the original jury pool.'"

(8/25/2025 Appellee's Brief, p. 18).

{¶46} "While the ideal situation is to have every jury pool reflect the diversity of the community, so long as the group at issue was not excluded based on race," Appellant in the instant case does not properly raise a *Batson* challenge. *Hill* at ¶ 25.

{¶47} Appellant's fourth assignment of error is without merit.

## CONCLUSION

{¶48} For the foregoing reasons, Appellant's assignments of error are not well-taken. The March 11, 2025 judgment of the Noble County Court of Common Pleas convicting Appellant for illegal conveyance of drugs of abuse onto grounds of a specified governmental facility (CH-PIATA, a Schedule I Substance) and sentencing him to 24

months in prison, consecutive to an unrelated term of incarceration, following a jury trial, is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**